UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA KNIGHT, | No. 2:19-cv-0541 DB |
| Plaintiff, | |
| v. | ORDER |
| ANDREW SAUL, Commissioner of Social Security,[1] | |
| Defendant. | |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[2] Plaintiff's motion argues that the Administrative Law Judge erred at step two of the sequential evaluation and that the ALJ improperly rejected plaintiff's testimony. For the reasons explained below, plaintiff's motion is granted, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for the payment of benefits.

---

[1] Andrew Saul became the Commissioner of the Social Security Administration on June 17, 2019. See https://www.ssa.gov/agency/commissioner.html (last visited by the court on July 30, 2019). Accordingly, Andrew Saul is substituted in as the defendant in this action. See 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] Both parties have previously consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c). (See ECF Nos. 5 & 6.)

1

**PROCEDURAL BACKGROUND**

In October of 2012, plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") alleging disability beginning on May 10, 2007. (Transcript ("Tr.") at 142-44.) Plaintiff's alleged impairments included Lyme disease, fibromyalgia, and cervical arthritis. (Id. at 56.) Plaintiff's application was denied initially, (id. at 80-84), and upon reconsideration. (Id. at 87-91.)

Plaintiff requested an administrative hearing and a hearing was held before an Administrative Law Judge ("ALJ") on June 24, 2014. (Id. at 33-55.) In a decision issued on October 28, 2014, the ALJ found that plaintiff was not disabled. (Id. at 28.) On April 15, 2016, the Appeals Council denied plaintiff's request for review of the ALJ's October 28, 2014 decision. (Id. at 1-5.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing a complaint in this court on June 15, 2016. (Id. at 1675.) On September 8, 2017, the court granted plaintiff's motion for summary judgement and remanded the matter for further proceedings. (Id. at 1687.)

On remand, another hearing was held before an ALJ on June 18, 2018. (Id. 1593-1639.) Plaintiff was represented by an attorney and testified at the administrative hearing. (Id. at 1593-97.) In a decision issued on November 28, 2018, the ALJ again found that plaintiff was not disabled. (Id. at 1586.) The ALJ entered the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2007.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of May 10, 2007 through her date last insured of December 31, 2007 (20 CFR 404.1571 *et seq.*).
>
> 3. Through the date last insured, the claimant had the following severe impairments: cervical spine degenerative disc disease; lumbar spine degenerative disc disease; vertigo (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual

      functional capacity to perform medium work as defined in 20 CFR 404.1567(c) in that she could lift and carry fifty pounds occasionally and twenty-five pounds frequently, sit for six hours of an eight hour day, and stand and walk for six hours of an eight hour day. However she could only frequently, not constantly, balance, stoop, kneel, crouch, crawl and climb stairs; she must avoid ladders and hazards (dangerous machinery, unprotected heights etc.). She was limited to work in moderate noise levels, such as a business office, department store, grocery store or light traffic.

      6. Through the date last insured, the claimant was capable of performing past relevant work as an assistant vice president, banking. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

      7. In the alternative, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has also acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a) and 404.1568(d)).

      8. The claimant was not under a disability, as defined in the Social Security Act, at any time from May 10, 2007, the alleged onset date, through December 31, 2007, the date last insured (20 CFR 404.1520(f)).

(Id. at 1570-86.)

Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on March 27, 2019. (ECF No. 1.)

## LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or

reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff's pending motion asserts the following two principal claims: (1) the ALJ erred at step two of the sequential evaluation; and (2) the ALJ improperly rejected plaintiff's testimony. (Pl.'s MSJ (ECF No. 13) at 13-24.[3])

////

////

---

[3] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

4

**I.     Step Two Error**

Plaintiff argues that the ALJ erred at step two of the sequential evaluation by finding that plaintiff's fibromyalgia and Lyme disease were not severe impairments. (Id. at 13-21.) At step two of the sequential evaluation, the ALJ must determine if the claimant has a medically severe impairment or combination of impairments. Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 140-41). The Commissioner's regulations provide that "[a]n impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a) & 416.921(a). Basic work activities are "the abilities and aptitudes necessary to do most jobs," and those abilities and aptitudes include: (1) physical functions such as walking, standing, sitting, lifting, and carrying; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) & 416.921(b).

The Supreme Court has recognized that the Commissioner's "severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." Yuckert, 482 U.S. at 153. However, the regulation must not be used to prematurely disqualify a claimant. Id. at 158 (O'Connor, J., concurring). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." Smolen, 80 F.3d at 1290 (internal quotation marks and citation omitted).

"[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 85-28); see also Ukolov v. Barnhart, 420 F.3d 1002, 1006 (9th Cir. 2005) (claimant failed to satisfy step two burden where "none of the medical opinions included a finding of impairment, a diagnosis, or

5

objective test results"). "Step two, then, is 'a de minimis screening device [used] to dispose of groundless claims[.]'" Webb, 433 F.3d at 687 (quoting Smolen, 80 F.3d at 1290); see also Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001) (discussing this "de minimis standard"); Tomasek v. Astrue, No. C-06-07805 JCS, 2008 WL 361129, at *13 (N.D. Cal. Feb.11, 2008) (describing claimant's burden at step two as "low").

With respect to plaintiff's fibromyalgia, SSR 12-p provides that a claimant can establish fibromyalgia as a medically determinable impairment if a doctor diagnosed fibromyalgia and the claimant meets either the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia or the 2010 ACR Preliminary Diagnostic Criteria for fibromyalgia.[4] See SSR 12-2p, 2012 WL 3104869, at *2-3. However, "[f]ibromyalgia's cause is unknown, there is no cure, and it is poorly-understood within much of the medical community. The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms." Benecke v. Barnhart, 379 F.3d 587, 590 (9th Cir. 2004). "What is unusual about the disease is that those suffering from it have 'muscle strength, sensory functions, and reflexes [that] are normal.'" Revels v. Berryhill, 874 F.3d 648, 656 (9th Cir. 2017) (quoting Rollins v. Massanari, 261 F.3d 853, 863 (9th Cir. 2001)). "Indeed, '[t]here is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain.'" Id.

In this regard, fibromyalgia's "symptoms are entirely subjective. There are no laboratory tests for [its] presence or severity." Jordan v. Northup Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 872 (9th Cir. 2004), overruled on other grounds by Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 970 (9th Cir. 2006) (en banc); see also Welch v. UNUM Life Ins. Co. of Am., 382 F.3d 1078, 1087 (10th Cir. 2004) (fibromyalgia presents conundrum for insurers and courts because no objective test exists for proving the disease, its cause or causes are unknown, and its symptoms are entirely subjective).

Here, the ALJ acknowledged that plaintiff's "treating primary care provider Dr. Coburn diagnosed fibromyalgia in April 2012." (Tr. at 1570.) Dr. William Mora, a "[t]reating provider

---

[4] The 2010 ACR was not in effect during the period at issue—May 10, 2007 through December 31, 2007—and plaintiff's argument does not reference the 2010 ACR.

1   since January 17, 2012 . . . opined the claimant had fibromyalgia prior to December 31, 2007

2   meeting the 1990 American College of Rheumatology Criteria for Classification of

3   Fibromyalgia."[5] (Id.)  On February 16, 2012, Rheumatologist Michael Thelen examined plaintiff

4   and found "diffuse muscle tenderpoints consistent with fibromyalgia."[6] (Id. at 626, 1572.)  And

5   plaintiff "testified to symptoms suggestive of this condition." (Id. at 1571.)

6         The ALJ, however, rejected this evidence and found that plaintiff's fibromyalgia was not a

7   severe impairment.  The ALJ's finding relied on the decision to give "great weight" to the opinion

8   of testifying medical expert Dr. Minh Vu, who opined that plaintiff's fibromyalgia was "a non-

9   medically determinable impairment during the period at issue[.]" (Id. at 1571-72.)  The ALJ also

10  found that "the needed objective findings in the medical records are not present." (Id. at 1571.)

11        However, Dr. Vu's nonexamining opinion was not based on independent clinical findings

12  or clinical findings not considered by the treating or examining physicians.  See Andrews v.

13  Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) ("Where . . . a nontreating source's opinion

14  contradicts that of the treating physician but is not based on independent clinical findings, or rests

15  on clinical findings also considered by the treating physician, the opinion of the treating physician

16  may be rejected only if the ALJ gives specific, legitimate reasons for doing so that are based on

17  substantial evidence in the record.").  In this regard, rejecting the opinions of treating and

18  examining physicians simply because "they conflicted with the testimony of a nonexamining

19  medical advisor" is "an error of law."  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).

20  ////

21

---

[5] The ALJ stated that Dr. Mora failed to "check the box of the opinion for 11/18 specific tenderpoints." (Tr. at 1570.) While true, the ALJ neglected to note that when prompted to "[c]ircle your patient's tender points," Dr. Mora circled 12 of 18 specific tenderpoints. (Id. at 1546.) Rejecting a treating physician's opinion "simply because the doctor[] failed to checkoff or delineate the 18 trigger points identified by the American College of Rheumatology, does not satisfy the requirement of citing specific and legitimate reasons supported by substantial evidence in the record[.]" Galvan v. Astrue, No. 08-cv-1271 JLT, 2010 WL 529440, at *10 (E.D. Cal. Feb 9, 2010).

[6] The ALJ noted that Dr. Thelen's findings "post-dated the date last insured[.]" (Tr. at 1572.) However, "reports containing observations made after the period for disability are relevant to assess the claimant's disability." Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988).

Likewise, "it is error for an ALJ to require objective evidence for a disease that eludes such measurement." Sharpe v. Colvin, No. CV 13-1557 SS, 2013 WL 6483069, at *4 (C.D. Cal. Dec. 10, 2013) (reversing an ALJ's conclusion that the plaintiff did not suffer from the severe medically determinable impairment of fibromyalgia); see also Benecke, 379 F.3d at 594 ("The ALJ erred by effectively requiring objective evidence for a disease that eludes such measurement."); Tully v. Colvin, 943 F .Supp.2d 1157, 1167-68 (E.D. Wash. 2013) ("The lack of objective clinical findings in this case of fibromyalgia is insufficient to support the ALJ's rejection of Dr. Stevenson's opinions regarding Plaintiff's functional capacity.").

With respect to Lyme disease, the ALJ found that it was "a medically determinable impairment because, even though [plaintiff] was not diagnosed until 2012, the claimant's lab results in May of 2007 showed evidence of infection." (Tr. at 1572.) And "[t]reating provider since January 17, 2012, William Mora MD opined that claimant had Lyme disease prior to December 31, 2007." (Id. at 1572-73.)

The ALJ again, however, rejected Dr. Mora's treating opinion in favor of the nonexamining opinion of Dr. Vu, even though Dr. Vu did "not argue with the **diagnosis** of Dr. Mora," and "accepted that the claimant might have had [Lyme disease] back in 2007," but simply disagreed with "the severity of the Lyme disease symptoms present during the period at issue." (Id. at 1573) (emphasis in original). Again, this was an error of law. See Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) ("The opinion of a nonexamining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician.").

As noted above, the ALJ's conclusion that the claimant lacks a medically severe impairment or combination of impairments is valid only when that conclusion is "clearly established by medical evidence." Webb, 433 F.3d at 687. On this record, the court cannot say that it was clearly established by the medical evidence that plaintiff's fibromyalgia and Lyme disease were not severe medical impairments during the period at issue. See Ortiz v. Commissioner of Social Sec., 425 Fed. Appx. 653, 655 (9th Cir. 2011) ("This is not the total absence of objective evidence of severe medical impairment that would permit us to affirm a

8

finding of no disability at step two."); Webb, 433 F.3d at 687 ("Although the medical record paints an incomplete picture of Webb's overall health during the relevant period, it includes evidence of problems sufficient to pass the de minimis threshold of step two."); Russell v. Colvin, 9 F.Supp.3d 1168, 1186-87 (D. Or. 2014) ("On review, the court must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that Ms. Russell did not have a medically severe impairment or combination of impairments."); cf. Ukolov, 420 F.3d at 1006 ("Because none of the medical opinions included a finding of impairment, a diagnosis, or objective test results, Ukolov failed to meet his burden of establishing disability.").

Nor can the court find the ALJ's errors harmless. An error is harmless only if it is "inconsequential" to the ALJ's "ultimate nondisability determination." Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006); see also Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (error harmless if "there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion."). An ALJ's failure to consider an impairment "severe" at step two is harmless if the ALJ considers all impairments – regardless of severity – in the subsequent steps of the sequential analysis. See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (finding step two error harmless as the ALJ specifically discussed plaintiff's bursitis and its effects when identifying the basis for limitations in plaintiff's RFC). Here, the ALJ did not consider fibromyalgia or Lyme disease in the subsequent steps of the sequential evaluation.

Accordingly, the court finds that plaintiff is entitled to summary judgment on the claim that the ALJ erred at step two of the sequential evaluation by finding that plaintiff's fibromyalgia and Lyme disease were not severe impairments.

**II.     Plaintiff's Subjective Testimony**

The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other

> symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so[.]

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). "The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking[.]" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."[7] Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792

////

---

[7] In March 2016, Social Security Ruling ("SSR") 16-3p went into effect. "This ruling makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." Trevizo v. Berryhill, 871 F.3d 664, 679 (9th Cir. 2017) (quoting SSR 16-3p) (alterations omitted).

(9th Cir. 1997)).  If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing."  Id.

Here, the ALJ recounted plaintiff's testimony at length noting, in relevant part, that plaintiff "alleges a combination of impairments causing weakness, fatigue and chronic pain, limiting activities of daily living, social functioning, and the capacity to understand, remember or apply information as well as maintain concentration, persistence and pace."  (Tr. at 1577.)  That plaintiff's "symptoms are severe flu symptoms, muscle pain and spasms, cramping, fatigue, headaches, stiff neck, weakness in legs, swallowing difficulty, anxiety, and difficulty concentrating."  (Id.)

After recounting plaintiff's testimony the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the objective medical evidence and other evidence in the record for the reason explained in [the] decision."[8]  (Id. at 1578.)

Although the ALJ's analysis of plaintiff's testimony is lengthy, ultimately the ALJ offered only two reasons for rejecting plaintiff's testimony.  First the ALJ relied on an asserted lack of medical evidence in support.  In this regard, the ALJ stated that "physical exams and [] medical imagery do not correspond to the level of pain and limitation alleged while symptoms are controlled and improved with the treatment received."  (Id.)  The ALJ went on to cite to an "unremarkable" chemistry panel, "a normal abdomen ultrasound examination," a normal "esosphagram," etc.  (Id.)

---

[8] "ALJs routinely include this statement in their written findings as an introduction to the ALJ's credibility determination" before "identify[ing] what parts of the claimant's testimony were not credible and why." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014). "The use of this generic language is not itself reversible error . . . but it inverts the responsibility of an ALJ, which is first to determine the medical impairments of a claimant based on the record and the claimant's credible symptom testimony and only then to determine the claimant's RFC. By rejecting a claimant's subjective symptoms 'to the extent they are inconsistent with the above residual functional capacity assessment,' the agency indicates that it is failing properly to incorporate a claimant's testimony regarding subjective symptoms and pain into the RFC finding, as it is required to do." Trevizo, 871 F.3d at 679 n.6.

After continuing a lengthy recounting of various items of medical evidence, the ALJ concluded:

> In light of these objective findings showing few significant and recurrent symptoms of abnormalities, upon physical examination and in the diagnostic testing and medical imagery, the claimant's alleged symptoms are not consistent with and supported by the evidence of record. Subjective complaints are outweighed by the objective findings in this medical record.
>
> ***
>
> Based on this record the undersigned finds the evidence does not fully support the functional limitations alleged by the claimant.

(Id. at 1582.)

However, "after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity" of the symptoms. Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005); see also Putz v. Astrue, 371 Fed. Appx. 801, 802-03 (9th Cir. 2010) ("Putz need not present objective medical evidence to demonstrate the severity of her fatigue."); Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) ("If an adjudicator could reject a claim for disability simply because a claimant fails to produce medical evidence supporting the severity of the pain, there would be no reason for an adjudicator to consider anything other than medical findings.").

The second reason offered by the ALJ for rejecting plaintiff's testimony was a reliance on Dr. Vu's testimony that plaintiff, "while facing some limits in working capacities, retains significant functionality to work."[9] (Tr. at 1582.) As noted above, however, Dr. Vu was a nonexamining physician whose opinion cannot constitute a clear and convincing reason to reject plaintiff's testimony. See Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir.2002) ("The clear and convincing standard is the most demanding required in Social Security

---

[9] The ALJ's decision to reject plaintiff's testimony may have also been influenced by the erroneous finding that plaintiff's fibromyalgia and Lyme disease were not severe impairments. See Buell v. Berryhill, 716 Fed. Appx. 600, 602 (9th Cir. 2017) ("If the ALJ had in front of him a valid diagnosis of fibromyalgia, it stands to reason that Buell's symptoms and behavior would have appeared in a different and more favorable light.").

cases. It is the same as that required to reject the uncontradicted opinion of a treating physician."); Reed v. Astrue, No. 2:10-cv-2282 DAD, 2013 WL 599950, at *5 (E.D. Cal. Feb. 14, 2013) ("Dr. Jaituni, however, was a nonexamining physician and his opinion cannot constitute a clear and convincing reason to reject plaintiff's testimony about the severity of her symptoms.").

For the reasons stated above, the court finds that the ALJ failed to offer a clear and convincing reason for rejecting plaintiff's testimony. Accordingly, plaintiff is also entitled to summary judgment on this claim.

**CONCLUSION**

After having found error, "'[t]he decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" Trevizo, 871 F.3d at 682 (quoting Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014).

Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, plaintiff's claim has been pending for almost eight years. Having previously erroneously evaluated plaintiff's claim the ALJ again erred. Under these circumstances the court is reluctant to send this matter back to the ALJ for yet a third bite at the apple. See, e.g., Benecke

v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."); Moisa v. Barnhart, 367 F.3d 882, 887 (9th Cir. 2004) ("The Commissioner, having lost this appeal, should not have another opportunity to show that Moisa is not credible any more than Moisa, had he lost, should have an opportunity for remand and further proceedings to establish his credibility.").

Moreover, not only has the ALJ repeatedly erred but the ALJ has repeatedly committed the same errors. In this regard, in remanding this matter the first time the court found that the ALJ improperly rejected Dr. Mora's opinion at step two of the sequential evaluation and improperly rejected plaintiff's subjective testimony. (Tr. at 1685-87.) Additionally, at the June 18, 2018 hearing a Vocational Expert testified that if Dr. Mora's opinion were credited there would be no jobs that plaintiff could perform. (Id. at 1634.)

For these reasons, the court finds that the record has been fully developed and further administrative proceedings would serve no useful purpose. The ALJ failed to provide legally sufficient reasons for rejecting Dr. Mora's opinion and plaintiff's testimony. If that evidence were credited as true, the ALJ would be required to find plaintiff disabled on remand. And the record as a whole does not create serious doubt as to whether plaintiff is, in fact, disabled within the meaning of the Social Security Act.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 13) is granted;

2. Defendant's cross-motion for summary judgment (ECF No. 14) is denied;

3. The Commissioner's decision is reversed;

4. This matter is remanded for the payment of benefits; and

5. The Clerk of the Court shall enter judgment for plaintiff and close this case.

Dated: September 14, 2020

DLB:6
DB\orders\orders.soc sec\knight0541.ord

/s/ DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

14